# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Honorable Marcia S. Krieger

Civil Action No. 12-cv-01950-MSK

**DARLEEN S. SCHMIDT,**

    **Plaintiff,**

v.

**CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,**

    **Defendant.**[1]

## OPINION and ORDER

**THIS MATTER** comes before the Court on Plaintiff Darleen S. Schmidt's appeal of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83c.  Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

**I.**    **Jurisdiction**

Ms. Schmidt filed a claim for disability insurance benefits pursuant to Title II and supplemental security income pursuant to Title XVI.  She asserted that her disability began on February 1, 2008.  After her claims were initially denied, Ms. Schmidt filed a written request for

---

[1]  At the time Ms. Schmidt filed her appeal, Michael J. Astrue was the Commissioner of Social Security.  Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commisioner of Social Security, effective February 14, 2013.

a hearing before an Administrative Law Judge ("ALJ").  This request was granted and a hearing was held on September 16, 2010.

After the hearing, the ALJ issued a decision with the following findings: (1) Ms. Schmidt met the insured status requirements of the Social Security Act through December 31, 2012; (2) she had not engaged in substantial gainful activity since February 1, 2008; (3) she had four severe impairments: depression, panic disorder, post-traumatic stress disorder ("PTSD") and substance abuse; (4) none of these impairments, considered individually or together, met or were equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 ("the Listings"); (5) Ms. Schmidt had the Residual Functional Capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: understanding, remembering and carrying out only simple instructions and the inability to tolerate interaction with the public; (6) she was unable to perform her past relevant work; and (7) she was not disabled because she was able to perform jobs that exist in significant numbers in the national economy, including cleaner/housekeeper and hospital cleaner.

The Appeals Council denied Ms. Schmidt's request for review of the ALJ's decision. Consequently, the ALJ's decision is the Commissioner's final decision for purposes of judicial review.  *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).  Ms. Schmidt's appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

**II.     Issues Presented**

Ms. Schmidt raises three challenges to the Commissioner's decision: (1) at Step 3, the ALJ failed to properly evaluate whether Ms. Schmidt's impairments met or were medically equivalent to an impairment in the Listings; (2) the ALJ's credibility evaluation and RFC finding

were not supported by substantial evidence; and (3) the ALJ's Step 5 finding is not supported by substantial evidence. As the Court concludes that Ms. Schmidt's second challenge requires reversal and remand, it is unnecessary to address her third and final challenge.

### III.     Material Facts

Having reviewed the record in light of the issues raised, the material facts are as follows. Ms. Schmidt was born on November 27, 1959 and completed high school. She has previously worked as an assistant manager in several retail and food service companies, an office clerk, and performing data entry. Ms. Schmidt states that she has been disabled since February 1, 2008 due to anxiety and depression. In both her testimony at the hearing and in several documents submitted as part of her disability application, Ms. Schmidt described numerous functional limitations she associated with her anxiety and depression. She stated that anxiety, depression and PTSD limited her ability to work by impairing her ability to concentrate and follow instructions; negatively affected her ability to shower, apply cosmetics, think, remember and perform household chores; and that she was scared of being fired from jobs and had little interest in working or living. *See* Exhibits 3E, 6E, 9E.

Ms. Schmidt's treatment records indicate show sporadic treatment for her depression and anxiety, with periods of intense, in-patient treatment followed by weeks or months of very little treatment other than medication. The records indicate that Ms. Schmidt did not have a consistent treatment provider, but did receive the large majority of her care at four medical facilities: the Aurora Mental Health Center, the Arapahoe/Douglas Mental Health Network, Lehigh Valley Hospital and Porter-Adventist Hospital.

In an August 2007 treatment note from the Aurora Mental Health Center, Kendra Liedke, a licensed clinical social worker, diagnosed Ms. Schmidt with major depression, rule-out bipolar

3

disorder and rule-out PTSD.  Exhibit 1F.  Ms. Liedke also described Ms. Schmidt's symptoms, including worthlessness, guilt, suicidal ideation, low energy and fatigue, depressed mood, decreased concentration, frequent crying and anhedonia.  In September 2007, Dr. Besser evaluated Ms. Schmidt at Aurora Mental Health.  According to Dr. Besser's notes, Ms. Schmidt stated that she was taking Seroquel, among other antidepressants, but that it was causing heavy drowsiness that interfered with her ability to go to work and slowed her metabolism.

Ms. Schmidt was also treated at the Arapahoe/Douglas Mental Health Network.  In April 2009, Julie Millick, a counselor, completed a mental status/functional limitations report which stated that Ms. Schmidt had anxiety and depression that caused increased difficulty with concentration, memory and focus, no motivation to look for work, hopelessness and anhedonia.  Exhibit 5F.  In July 2009, Cara Allan diagnosed Ms. Schmidt with major depressive disorder, recurrent.  That same month, Karen Schoenhals, a nurse, wrote in a Psychiatric Note that Ms. Schmidt's mood was anxious "possibly due to the Zoloft," that she "appears highly anxious and may also be having some withdrawal symptoms related to medication changes" and that she "states she thinks maybe she started feeling suicidal on the Cymbalta."  Ms. Schoenhals also wrote that Ms. Schmidt attempted to commit suicide and overdosed on her medication.  One month later, Ms. Schmidt told Ms. Schoenhals that she was having side effects from Zoloft, including increased anxiety and tightness in her chest, as well as poor concentration.  Dr. Riecks, a treating psychologist at Arapahoe/Douglas Mental Health, wrote in an August 2009 Progress Note that Ms. Schmidt "reported having great difficulty with medication side effects, especially during the past month, such that she has not been adequately medicated."

Ms. Schmidt was admitted to the Lehigh Valley Hospital in April 2008 and diagnosed by Dr. Rifai with major depression.  One year later, Ms. Schmidt was admitted to Porter-Adventist

Hospital for suicidal ideation. The attending physician, Dr. Drake, wrote in his treatment notes that Ms. Schmidt complained of chronic arthralgia in her shoulders, which she associated with her Abilify prescription. Exhibit 3F. According to a Psychiatric History Report prepared by Dr. Renaghen during Ms. Schmidt's hospital admission, Ms. Schmidt also stated that she had no initiative, periodic suicidal ideation, and was afraid to look for a new job because she had been fired from past jobs. *Id*. Additionally, Ms. Schmidt stated that Seroquel caused her to have restless leg syndrome.

During the hearing, Dr. Pelc testified as a medical expert. He stated that he considered only the objective medical evidence in the record, namely exhibits 1F-11F. Having reviewed these exhibits, he offered the opinion that Ms. Schmidt had no more than mild impairment in her activities of daily living, moderate limitations in social functioning and moderate limitations in concentration, persistence and pace.

In addition to the opinion of Dr. Pelc, the only other medical opinion in the record was from Dr. Kutz, a consulting examiner. Dr. Kutz examined Ms. Schmidt a single time, performing a psychological examination in August 2009. Based on this examination, Dr. Kutz diagnosed Ms. Schmidt with major depressive disorder, panic disorder, rule out PTSD and rule out personality disorder. Drawing from the examination results and his diagnoses, Dr. Kutz concluded that Ms. Schmidt had moderate impairment in her attention, concentration, persistence, pace and task completion. Dr. Kutz also concluded that Ms. Schmidt had moderate to marked impairment in her social adaptation but no significant impairment in her memory or understanding.

In the decision, the ALJ gave great weight to part of Dr. Kutz's opinion, but rejected part of it in deference to Dr. Pelc's assessment. The ALJ rejected Dr. Kutz's conclusion that Ms.

Schmidt had moderate to marked impairment in her social adaptation because "the records of [Ms. Schmidt's] treating sources at Arapahoe Douglas Mental health do not support marked [social functioning] restrictions, as repeated exams show that she was calm, cooperative, pleasant, and conversational." The ALJ cited to several medical records in support of this finding, including records from December 2009, January 2010, May 2010, and June 2010 which variously describe her as calm, cooperative, oriented, alert, pleasant, and conversational.

Finally, the ALJ considered Ms. Schmidt's hearing testimony regarding the side effects of her medication. Ms. Schmidt testified that she takes Ambien to help her sleep, but that "[the pills] make me do stuff that I don't know I'm doing." Although the ALJ considered this testimony, no other evidence of medication side effects was discussed in the decision.

### IV.     Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 f.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

The ALJ is required to consider the medical opinions in the record, along with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b); § 416.927(b).[2] When evaluating medical opinions, the medical opinion of an examining physician or psychologist is generally given more weight than the medical opinion of a source who has not examined the claimant. The ALJ should evaluate an examining physician's medical opinion according to the factors outlined in § 404.1527. Those applicable to an examining physician include:

> 1) the degree to which the physician's opinion is supported by relevant evidence;
> 2) consistency between the opinion and the record as a whole; 3) whether or not the physician is a specialist in the area upon which an opinion is rendered; and 4) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

§ 404.1527.

Having considered these factors, an ALJ must give good reasons in the decision for the weight assigned to a treating source's opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Luttrell v. Astrue*, 453 Fed.Appx. 786, 794 (10th Cir. 2011) (unpublished). The ALJ is not required to explicitly discuss all the factors outlined in § 404.1527. *Oldham*, 509 F.3d at 1258; SSR 06-03p. However, the ALJ must discuss not just evidence that supports the decision, but also "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citation omitted). The ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citation omitted). Similarly, "[a]n ALJ is not entitled to pick and choose through an

---

[2]  All references to the Code of Federal Regulations (C.F.R.) are to the 2012 edition. Hereafter, the Court will only cite the pertinent Title II regulations governing disability insurance benefits, found at 20 C.F.R. Part 404, e.g § 404.1527. The corresponding regulations governing supplemental security income under Title XVI, which are substantively the same, are found at 20 C.F.R. Part 416.

uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted).

At Step 4 in the disability analysis, the ALJ is also required to assess a claimant's RFC based on all relevant evidence, medical or otherwise. § 404.1545. As part of this evaluation, the ALJ must take into consideration all the claimant's symptoms, including subjective symptoms. § 404.1529(a). Subjective symptoms are those that cannot be objectively measured or documented. One example is pain, but there are many other symptoms which may be experienced by a claimant that no medical test can corroborate. By their nature, subjective symptoms are most often identified and described in the testimony or statements of the claimant or other witnesses.

In assessing subjective symptoms, the ALJ must consider statements of the claimant relative to objective medical evidence and other evidence in the record. § 404.1529(c)(4). If a claimant has a medically determinable impairment that could reasonably be expected to produce the identified symptoms, then the ALJ must evaluate the intensity, severity, frequency, and limiting effect of the symptoms on the claimant's ability to work. § 404.1529(c)(1); SSR 96-7p.

In the 10th Circuit, this analysis has three steps: 1) the ALJ must determine whether there is a symptom-producing impairment established by objective medical evidence; 2) if so, the ALJ must determine whether there is a "loose nexus" between the proven impairment and the claimant's subjective symptoms; and 3) if so, the ALJ must determine whether considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[3] The third step of the *Luna* analysis involves a holistic review of the record. ALJ must consider pertinent evidence including a claimant's

---

[3] The ALJ need not follow a rote process of evaluation, but must specify the evidence considered and the weight given to it. *Qualls v. Apfel*, 206 F3d 1368, 1372 (10th Cir. 2000).

history, medical signs, and laboratory findings, as well as statements from the claimant, medical or nonmedical sources, or other persons. § 404.1529(c)(1). In addition, § 404.1529(c)(3) instructs the ALJ to consider:

> 1) [t]he individual's daily activities; 2) [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) [f]actors that precipitate and aggravate the symptoms; 4) [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms…; and 7) [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Inherent in this review is whether and to what degree there are conflicts between the claimant's statements and the rest of the evidence. *Id.* Ultimately, the ALJ must make specific evidentiary findings with regard to the existence, severity, frequency, and effect of the subjective symptoms on the claimant's ability to work. § 404.1529(c)(4). This requires specific evidentiary findings supported by substantial evidence. *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988); *Diaz*, 898 F.2d at 777.

### V.     Discussion

#### A. The ALJ's Step 3 Finding

At Step 3, the ALJ found that none of Ms. Schmidt's severe impairments met or were equivalent to any of those impairments described in the Listings. The ALJ's based this finding on an evaluation of the evidence in the record, including medical opinions from Dr. Pelc and Dr. Kutz. Ms. Schmidt argues that: (a) Dr. Pelc failed to consider all the evidence in the record when forming his opinion; and (b) that the ALJ failed to adequately explain why one part of Dr. Kutz's opinion was given great weight while another part was rejected. The Commissioner

responds that: (a) the records Dr. Pelc reviewed included all the pertinent evidence in the record; and (b) the ALJ adequately explained why only a part of Dr. Kutz's opinion was adopted.

The Court first addresses Dr. Pelc's opinion. According to his hearing testimony, Dr. Pelc reviewed the objective medical evidence before formulating his medical opinion. This included Exhibits 1F-11F, which constitute nearly all the relevant medical evidence in the record. However, Dr. Pelc testified that he did not review Exhibits 1E-14E, which included forms containing Ms. Schmidt's statements regarding her subjective symptoms.

The crux of Ms. Schmidt's argument is that Dr. Pelc failed to consider evidence that included her statements regarding her subjective symptoms. However, the exhibits that Dr. Pelc reviewed include multiple accounts of Ms. Schmidt's subjective complaints that substantially mirror her statements in the exhibits that Dr. Pelc did not consider.[4] Thus, any error in this regard is harmless.

Ms. Schmidt also argues that the ALJ did not properly consider Dr. Kutz's opinion. The decision states that the ALJ gave great weight to some portions of Dr. Kutz's opinion but rejected others. Specifically, the ALJ rejected Dr. Kutz's conclusion that Ms. Schmidt had moderate to marked restrictions in social functioning in favor of Dr. Pelc's assessment that

---

[4] For example, in an April 2009 disability report (Exhibit 3E), Ms. Schmidt stated that she experienced anxiety and depression, both of which affected her concentration, ability to follow instructions and made her scared of being fired. In a disability report from October 2009 (Exhibit 6E), Ms. Schmidt indicated that her condition had deteriorated, she was very depressed and suicidal, and had no interest in daily activities or living. In a June 2009 adult function report (Exhibit 9E), Ms. Schmidt stated that her depression and anxiety caused problems with work, thinking and daily activities. Ms. Schmidt's depression, anxiety, PTSD, and suicidal ideation, are all reflected in the medical records Dr. Pelc reviewed, as are her subjective symptoms and functional limitations. Records from August 2007 (Exhibit 1F), April 2009 (Exhibit 3F), and July 2009 (Exhibit 5F) all reflect functional limitations stemming from depression and anxiety, including depressed mood, frequent crying, difficulty concentrating, poor motivation, suicidal ideation, and a fear of losing any new employment.

restrictions in this area were only moderate.  The decision explains that Dr. Pelc studied the treatment records in formulating his opinion while Dr. Katz based his opinion upon a single examination.  The medical reports that Dr. Pelc reviewed included those from December 2009 and January, May, June and September 2010.  The ALJ explains that, "the records of [Ms. Schmidt's] treating sources at Arapahoe Douglas Mental health do not support marked [social functioning] restrictions, as repeated exams show that she was calm, cooperative, pleasant, and conversational."

In essence, the ALJ deferred to Dr. Pelc's assessment of records that reflect a longitudinal assessment of Ms. Schmidt's condition rather than Dr. Kutz's assessment based upon a single consulting examination.  The ALJ's explanation of why Dr. Kutz' assessment was not adopted *in toto* is adequate.

### B.  The ALJ's Evaluation of Ms. Schmidt's Statements

In formulating the Step 4 RFC finding, the ALJ considered Ms. Schmidt's statements regarding her subjective symptoms.  The ALJ found that Ms. Schmidt's impairments "could reasonably be expected to cause some of the alleged symptoms; however, [Ms. Schmidt's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC]."  Ms. Schmidt argues that this finding was not supported by substantial evidence.  This Court agrees.

When evaluating a claimant's statements regarding his or her subjective symptoms, the ALJ must follow the three part test outlined in *Luna*.  In the decision, the ALJ's analysis of Ms. Schmidt's statements utilized this three part test.  However, in evaluating the functional effects of Ms. Schmidt's impairments, the third part of the *Luna* analysis, the ALJ failed to adequately

consider all the relevant factors.  In particular, the ALJ failed to consider the side effects of Ms. Schmidt's medications, a factor specifically listed in § 404.1529.

In the decision, the ALJ briefly mentioned Ms. Schmidt's testimony regarding side effects: "[Ms. Schmidt] testified that Ambien causes side effects including loss of concentration and attention, forgetfulness and doing things without realizing it."  However, the ALJ did not address numerous instances of medication side effects reflected in the medical records.  For instance, in September 2007, Ms. Schmidt told Dr. Besser that an anti-depressant, Seroquel, was causing heavy drowsiness that interfered with her ability to go to work and slowed her metabolism.  Ms. Schmidt complained of shoulder and hip pain during an April 2009 emergency room visit, which she associated with Abilify.  In July and August 2009, Ms. Schmidt reported problems with both Zoloft and Cymbalta.  She associated Zoloft with increased anxiety and Cymbalta with suicidal tendencies.  During this time she also attempted suicide.  The ALJ should have considered these potential medication side effects, as they tend to support Ms. Schmidt's statements regarding her subjective symptoms.

For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED**, and the case is **REMANDED** for further proceedings at Step 4, and if appropriate, Step 5.  The Clerk shall enter a Judgment in accordance herewith.

DATED this 4th day of September, 2013

                                            **BY THE COURT:**

                                            *Marcia S. Krieger* (signature)

                                            Marcia S. Krieger  
                                            United States District Judge